UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CRAIG KOLSKI and EVA KOLSKI,   )
                                )
     Plaintiffs              )
                                )
     v.                      )    Cause No.   3:08-CV-416-RM
                                )
SAFECO INSURANCE COMPANIES  )
and JANE DOE,                )
                                )
     Defendants             )

OPINION AND ORDER

This case is before the court on the motion of defendant Safeco Insurance Company of Illinois for summary judgment on the complaint filed by plaintiffs Craig and Eva Kolski alleging breach of contract and bad faith. With diversity jurisdiction established pursuant to 28 U.S.C. § 1332, the court grants Safeco's motion for summary judgment based on the reasons that follow.

I

On August 9, 2006, Eva Kolski drove the Kolskis' 2005 Ford Expedition northbound on Michigan Street in South Bend. As she entered an intersection controlled by a green traffic light, an unidentified driver entered the same intersection against the red light, struck the Kolskis' Expedition, and fled the scene. Safeco insured the Kolskis under policy number K1751622, which covered the hit-and-run claim under the uninsured and underinsured motorists coverage.

The policy didn't require a deductible, but required Safeco to pay for "damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured and caused by an accident; and property damage caused by an accident." Doc. No. 20-3 at 1, 9. Safeco ultimately paid for or reimbursed the Kolskis for the deductible and any repairs to the Expedition, and provided a rental car up to the amount available under the policy.

The Kolskis complained at first that the repairs shouldn't have been done at all because the Expedition was a total loss because of the extensive damage Jones Body Shop discovered upon inspection. The Kolskis abandoned this argument in their summary judgment response; uncontradicted facts show that although repairman Terry Jones initially thought the Expedition was a total loss, he never completed an estimate for the cost of the total damages compared to the vehicle's value. Mr. Kolski also testified that the repair costs didn't exceed the Expedition's value, and that it was "a good business decision on Safeco's part to repair it."

The Kolskis' bad faith claim is based on the 277 days' worth of repair, for which they believe Safeco claims adjuster Scott Pollack is responsible. Mr. Pollack didn't inspect the Expedition until three or four days after it arrived at Jones Body Shop, took two weeks to provide a value estimate of the vehicle, took ten days to act after the cracked frame was discovered, was non-responsive to the Kolskis' questions, and took several days to return Terry Jones's phone calls. Mr. Pollack

also missed a November 8 meeting with Mr. Kolski and then allegedly lied about canceling the meeting in advance. Mr. Pollack noted in the claim file on November 10 that he canceled the November 7 meeting, but the Kolskis say he didn't cancel until an hour and a half after the meeting was scheduled. As further evidence of Safeco's alleged bad faith, the Kolskis saw their Expedition parked at Gates Town & Country for six to eight weeks waiting for repair, and the Kolskis believe that Gates furnishes Mr. Pollack an office.

No direct evidence contradicts Safeco's explanation for the length of time it took to repair the Expedition. Mr. Kolski decided to have the Expedition repairs done at Jones Body Shop because Mr. Jones had done work for him in the past. Mr. Pollack conducted a cursory inspection of the Expedition three or four days after it arrived at Mr. Jones's shop and decided to have the repairs completed. Mr. Kolski knew that Mr. Jones had other vehicles to fix before working on the Expedition, but kept the vehicle at Mr. Jones's shop. Mr. Jones was hospitalized during this time frame, delaying the start of his repair work on the Expedition.

Once the Expedition's repair got under way, Mr. Jones found more damage and notified Mr. Pollack. Mr. Pollack arrived at the shop a day or two later, looked at the additional parts needed, and approved the repairs. Around October 23, Mr. Jones discovered a crack in the Expedition's frame that "if you didn't know [the crack] was there, you wouldn't have seen it. It was very hard to see. It was hidden almost and. . . it wasn't obvious." Mr. Pollack returned Mr. Jones's call "relatively quick[ly]," and within two days arrived at the shop a third time to inspect the

Expedition. After Mr. Jones convinced Mr. Pollack that the frame needed to be replaced, Mr. Jones asked that the Expedition be taken to Gates because replacing the frame was more than Mr. Jones could do alone.

Mr. Pollack met with Mr. Kolski two days later to discuss whether the vehicle was a total loss or the frame should be replaced. Mr. Pollack needed to research the Expedition's value and the cost of repairs, so they scheduled a follow-up meeting for November 8. Mr. Pollack didn't show up at the meeting, but Mr. Kolski returned Mr. Pollack's belated call and re-scheduled for November 10. Mr. Pollack determined that the repairs still didn't exceed the $26,500 value of the Expedition and decided to have the frame replaced, despite Mr. Kolski's hoping the vehicle would be deemed a total loss. Mr. Kolski didn't dispute the vehicle's value and had "no problem" with having Gates replace the frame since Mr. Jones couldn't do it. The Expedition arrived at Gates in mid-November, but a delay in getting a replacement frame caused more delay in getting the repairs done. Gates didn't return the Expedition to Mr. Jones's shop until late January 2007. Mr. Jones again had other vehicles to finish before the Expedition, but Mr. Kolski wanted Mr. Jones (as opposed to anyone else) to complete the rest of the repair work since he had "made a commitment to Jones Body Shop." Mr. Jones took almost two months to finish the repairs. Mr. Kolski picked up the Expedition on March 24.

The Kolskis continued to have problems with the Expedition. On April 11, they took the vehicle back to Mr. Jones because of electrical and gear problems.

The vehicle ended up at Gates, where Mr. Kolski believes it sat for six to eight weeks. Gates eventually sent it to Jordan for some of the electrical repairs. The Kolskis picked up the Expedition at Mr. Jones's shop on June 8.

On June 19, after confirming that Safeco would pay, Mr. Kolski took the Expedition to Gurley Leep to check the alignment and body location on the frame. Gurley Leep indicated that the vehicle alignment was fine. Because Mr. Kolski didn't think the body location was checked, he took it to Gurley Leep a second time but got the same result and decided to let it go.

Although satisfied with Mr. Jones's repair work, Mr. Kolski was dissatisfied with Gates' performance and still believes that the Expedition's frame was never replaced properly because air leaks, ignition issues, and gauge problems remain. Mrs. Kolski doesn't drive the vehicle any more because she doesn't trust it. Since June 2007, the Kolskis haven't tried to contact Safeco about performing any more work on the Expedition from damages resulting from the August 2006 accident.

II

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most

favorable to the non-moving party, here, the plaintiffs. <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 255 (1986).

The moving party bears the burden of informing the court of the basis for the motion and identifying the evidence that demonstrates an absence of genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once this burden is met, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must. . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2); <u>Beard v. Whitley County</u> <u>REMC</u>, 840 F.2d 405, 410 (7th Cir. 1988).

Summary judgment for a defendant is appropriate when a plaintiff doesn't make a sufficient showing to establish the existence of an essential element on which the plaintiff bears the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323. Summary judgment isn't appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." <u>Anderson v. Liberty</u> <u>Lobby</u>, 477 U.S. at 251-252. The proper inquiry, then, is "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250.

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." <u>Springer v. Durflinger</u>, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation and citation omitted). Summary judgment isn't a

substitute for a trial on the merits or a vehicle for resolving factual disputes. <u>Waldridge v. Am. Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment isn't only appropriate, but mandated. *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322.


III

"A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply if it presented with the issue." <u>Allstate Ins. Co. v. Keca</u>, 368 F.3d 793, 796 (7th Cir. 2004). Because this case invokes the court's diversity jurisdiction, and neither party raises a conflict of law issue, the court "must apply the state law that would be applied in this context by the Indiana Supreme Court." <u>Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.</u>, 25 F.3d 484, 486 (7th Cir. 1994) (citation omitted).


A

The essential elements of an Indiana breach of contract claim are the existence of a contract, the defendant's breach of the contract, and damages. <u>Indiana Bur. of Motor Veh. v. Ash, Inc.</u>, 895 N.E.2d 359, 365 (Ind.Ct.App. 2008). A party breaches a contract either by placing itself in a position where it can't perform its contractual obligations, or by failing to perform all of its contractual

obligations. <u>Strodtman v. Integrity Builders, Inc.</u>, 668 N.E.2d 279, 282 (Ind.Ct.App. 1996). The parties haven't disputed the insurance policy's existence or the interpretation of the relevant provisions; instead, the Kolskis originally alleged that Safeco's actions constituted a breach of the policy.

In their response to Safeco's summary judgment motion, the Kolskis didn't address their breach of contract claim or identify any portion of the policy Safeco allegedly breached. The Kolskis don't disagree that Safeco ultimately paid for or reimbursed the Kolskis for the deductible and for all repairs made to the Expedition, and provided a rental car as required under the policy. The undisputed evidence shows that Safeco fully performed all of the specific obligations that it agreed to undertake pursuant to the policy. Because the Kolskis didn't raise any genuine issue as to any material fact on their breach of contract claim, Safeco is entitled to summary judgment on that claim.

B

Under Indiana law, an insurance company has a duty to deal with its insured in good faith, and a breach of that duty allows for an independent cause of action in tort. <u>USA Life One Ins. Co. of Ind. v. Nuckolls</u>, 682 N.E.2d 534, 541 (Ind. 1997); *see* <u>Schimizzi v. Ill. Farmers Ins. Co.</u>, 928 F.Supp. 760, 769-772 (N.D. Ind. 1996) (discussing the evolution of Indiana law regarding the recoverability of punitive damages for abusive conduct by insurers, and the recognition of a cause

of action for the tortious breach of an insurer's duty to deal with its insured in good faith).

An insurer's duty of good faith dealing includes the "obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 519 (Ind. 1993). Neither a good faith dispute over a claim's validity or amount nor a lack of a diligent investigation is a breach of the duty of good faith dealing, but knowingly denying a claim without a rational, principled basis for doing so is a breach. Id. at 520. The mere showing of the new tort does not justify an award of punitive damages; as in other settings, "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." Id.; see also Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 977 (Ind. 2005) (a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will). The standard for establishing a breach of an insured's duty of good faith is high. Firstmark Standard Life Ins. Co. v. Goss, 699 N.E.2d 689, 696 (Ind.Ct.App. 1998).

The Kolskis agree that Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d at 519, provides the relevant law applicable to this case. The Kolskis also

acknowledge that their case doesn't "squarely fit in the [Erie] court's enumerate[d] provisions, but [it] clearly demands further full hearing to a trier of fact as to the sum of the defendant's conduct resulting in injury to the plaintiffs." While Safeco didn't delay in making payment under the policy, the Kolskis claim that Mr. Pollack's delay in decision-making and answering inquiries constitutes bad faith. Federal district courts aren't to make new state law in diversity cases; expanding Indiana law is the privilege of the courts of Indiana, not the courts of the United States. *See, e.g.,* Knutson v. UGS Corp., 526 F.3d 339, 341 (7th Cir. 2008).

The court can't agree with the Kolskis that a reasonable trier could find that Safeco breached its duty of good faith. The only facts supporting the Kolskis' bad faith claim are a few delays Mr. Pollack caused in returning phone calls and in taking some time to consider viable options for the Expedition's repair. When additional damage was discovered, Mr. Pollack twice went to Jones Body Shop within a couple of days to determine the additional costs of repair and approve the needed work. When the cracked frame was discovered, Mr. Pollack investigated the crack in the frame, took the time necessary to calculate the vehicle's value and the cost of repair, met with Mr. Kolski to discuss the matter, found another body shop to replace the frame, and covered the costs to repair the Expedition. While Mr. Pollack can be found to have lied about cancelling a meeting in advance, that meeting was immediately rescheduled and held two days later. In any event, the meeting had nothing to do with Safeco's decision to provide coverage for the hit-

and-run claim, because Safeco's decision to pay out the proceeds under the policy was already made.

Maybe these delays were unreasonable, but nothing in this record would allow such a finding. The closest the summary judgment record comes to addressing that issue is Mr. Jones's deposition testimony that the three to four day delay and the seven to ten day were not unreasonable. Limiting the evidentiary use of that testimony to something short of an opinion on the law, it seems that Mr. Jones found nothing unusual about such delays.

Even if the delays caused by Mr. Jones and Gates were unreasonable, there's no dispute that Safeco wasn't responsible for those delays—Mr. Kolski chose to have Mr. Jones perform the repairs, and Mr. Jones asked that someone else perform the frame's replacement. Gates, not Safeco, had trouble getting a frame for the Expedition. Any delays or lack of diligent investigation for which Safeco was actually responsible may constitute poor service or even negligence or poor judgment, but don't include the element of culpability required for an award of punitive damages. *See* Lumbermens Mut. Cas. Co. v. Combs, 873 N.E.2d 692, 713-14 (Ind.Ct.App. 2007).

Even after Gates and Mr. Jones finally completed the repairs, Safeco paid for later inspections and repairs that the Kolskis sought. No evidence supports the Kolskis' complaint that the Expedition isn't properly secured to the frame, and Mr. Kolski himself said that having the Expedition repaired was a good business decision on Safeco's part.

The Kolskis argue that enough of a fact issue exists for trial, but seemed to concede that if their case doesn't improve by trial, judgment as a matter of law might be appropriate at the close of their case. *See* FED. R. CIV. P. 50(a). There is, however, no meaningful distinction between the test for a summary judgment motion and the test for a motion for judgment as a matter of law. *See, e.g.,* Hossack v. Floor Covering Associates of Joliet, Inc., 492 F.3d 853, 859-860 (7th Cir. 2007). While the Kolskis may be unsatisfied with Gates' performance and the Expedition's repair, no reasonable jury could possibly find that Safeco's temporal delays constituted bad faith, entitling Safeco to judgment as a matter of law.

IV

Viewing the record in the light most favorable to the non-movant, the Kolskis have failed to establish that Safeco breached the insurance policy or acted in bad faith. There being no genuine issue of fact for trial, the court GRANTS defendant Safeco's motion for summary judgment (Doc. No. 19) and DIRECTS the clerk to enter judgment in favor of defendant Safeco Insurance Company of Illinois and against the plaintiffs Craig and Eva Kolski. Any claims against the unidentified defendant Jane Doe are DISMISSED WITHOUT PREJUDICE. This case is considered closed.

SO ORDERED.

ENTERED: ___January 5, 2010___

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court